## LADD et al. v. LAIRD et al.
### No. 1488.

Court of Civil Appeals of Texas. Waco.

May 31, 1934.

Saye, Smead & Saye, of Longview, for appellants.

Brachfield & Wolfe and Smith & West, all of Henderson, Edwards & Hughes, of Tyler, and Claude McCaleb and John Broughton, both of Houston, for appellees.

ALEXANDER, Justice.

This is an action in trespass to try title brought by the heirs of Green Ladd and their grantees against the heirs of W. L. Laird and their grantees to recover the title and possession of 60 acres of land in Rusk county. The case was tried before the court without a jury, and resulted in a judgment for the defendants. The plaintiffs appealed.

The trial court found that the defendants and those under whom they claimed had been in peaceable and adverse possession of the land in question for more than ten years and had title thereto by virtue of the ten-year statute of limitation (Rev. St. 1925, art. 5510). This finding is fully supported by the evidence and justifies the judgment rendered, unless, as contended by the plaintiffs, the defendants, by certain instruments in writing hereafter to be referred to, recognized the plaintiffs' title to said land in such manner and to such an extent as to interrupt the running of the statute of limitation. In order to properly appraise the effect to be given to the instruments in question, a brief history of the title to the land will be necessary. Prior to 1910, W. L. Laird owned a tract of land in the I.

Ruddle survey in Rusk county which was thought to contain 180 acres, but which actually contained only 128 acres. The tract of land was in the shape of a triangle or wedge, with the sharp point of the wedge to the south, the I. & G. N. Railroad constituting the east line, plantation branch the west line, and the north boundary line being defined by a straight line running N. 81 E. from plantation branch to the I. & G. N. Railway. This suit involves 60 acres off of the north end of said tract. In 1910 W. L. Laird conveyed the entire tract of land to Green Ladd and retained vendor's lien notes for a part of the purchase price. In 1912 Green Ladd, being unable to pay said purchase-money notes, arranged with Laird to reinvest Laird with the title to 60 acres off of the north end of said tract and to have the amount of his purchase-money notes reduced proportionately. In keeping with this purpose, the parties employed a surveyor, went upon the ground, and surveyed a line from plantation branch to the I. & G. N. Railroad parallel to the north line of the original tract and far enough south thereof to include 60 acres. Green Ladd then executed and delivered to Laird a deed to the whole tract, with the understanding that Laird would reconvey to him all of said land, less the 60 acres off of the north end of said tract, which 60 acres was to be retained by Laird. Laird, by his deed of date January 11, 1912, reconveyed the property to Ladd, but, instead of describing the land by beginning at the southwest corner of said 60-acre tract so as to exclude same from the conveyance as contemplated by the parties, actually described the land to be conveyed thereby as follows: "Beginning at the North West corner of W. L. Laird's land on the plantation branch, Thence North 81 East 23 chains, 10 links to the right-of-way of the I. & G. N. R. R., Thence South West with said right-of-way 43 chains 50 links to plantation branch, Thence Northwest with all of the meanderings of said branch 55 chains to place of beginning, containing in all 120 acres of land, more or less."

This description, if we give preference to calls for natural objects, was broad enough to include all of the original tract of land, so that Laird actually reconveyed to Ladd the identical land theretofore conveyed to him by Ladd instead of retaining 60 acres off of the north end of the tract as was contemplated by the parties. Subsequent to the execution of said deed, Green Ladd and his heirs from time to time rented various portions of the land here in dispute from W. L. Laird and paid him rent therefor. In 1913 W. L. Laird erected a fence along the line as run by said surveyor, took possession of the 60 acres north thereof, and has occupied and used the same continuously since said date. In 1921 the heirs of Green Ladd had the land in their possession surveyed, and, upon finding that they had only about 60 acres instead of 120 acres, as recited in their deed, they applied to Laird for a reduction in the amount of their purchase-money notes, which notes were still unpaid. As a consequence, the parties entered into a written agreement of date September 16, 1921, wherein it was recited that, whereas W. L. Laird by deed dated January 11, 1912, conveyed to Green Ladd a tract of land on the I. Ruddle survey in Rusk county supposing it to contain 120 acres, and that the said Green Ladd had since died, leaving his wife, Celia Ladd, and a son, Joe Ladd, who were undertaking to pay the balance of the purchase money of said land, and whereas "a survey of said land discloses that there is an error in said first deed, and instead of there being 120 acres of land, more or less, there are sixty (60) acres more or less, and whereas, the said W. L. Laird and Celia Ladd and Joe Ladd have agreed that in consideration of the said W. L. Laird giving and allowing credit on the obligations aforesaid (the unpaid purchase money notes), to the extent of Three Hundred and Fifty ($350.00) Dollars, which said credit was made and allowed on January 1st, 1920, it is agreed that the amount of acreage in said tract of land aforesaid is sixty (60) acres, more or less, instead of one hundred and twenty (120) acres, as erroneously set forth in said deed, * * * and that the credit allowed aforesaid is in full consideration and in full payment of all shortage in the said tract of land, as fully shown by said deed recorded in Volume 73, page 104, Rusk County Deed Records." In January, 1927, W. L. Laird sued the heirs of Green Ladd and recovered a judgment foreclosing the vendor's lien retained by him in the deed executed by him to Green Ladd of date January 11, 1912. During the same month W. L. Laird executed a release of said vendor's lien.

The plaintiffs assert that W. L. Laird, by the execution of the written contract of date September 16, 1921, by which the parties agreed that the tract of land conveyed to Ladd actually contained only 60 acres instead of 120 acres, thereby recognized plaintiffs' title to the land here in dispute in such manner as to interrupt the running of the statute of limitation in his behalf. The plaintiffs further contend that a like effect was ac-

complished when Laird took a judgment fore-closing his vendor's lien and again when he executed a release of the lien held by him.

The settlement agreement signed by the parties of date September 16, 1921, and above referred to, contains no language from which it could be reasonably inferred that Laird recognized Ladd's heirs as the true owners of the 60 acres of land here in dispute which was then in Laird's possession. In fact, we think it shows a contrary intention; that is, that all parties recognized said land as belonging to Laird. The deed to Green Ladd called for 120 acres. Green Ladd's heirs had in their possession, as shown by a survey made by them, 60 acres or more, not including the land here in dispute. If the parties had considered the 60 acres here in dispute as belonging to Green Ladd's heirs, then said heirs would have had their full quota of 120 acres as called for in their deed, and hence there would have been no occasion for a reduction in the amount of the purchase-money notes. The plaintiffs' contention in this respect is overruled.

The judgment recovered by Laird against Ladd's heirs foreclosing the lien retained in the deed of date January 11, 1912, described the land foreclosed on with the same field notes as contained in said deed, with the following additional statement: "Being 120 acres of land 3½ miles S. W. from the town of Kilgore in Rusk County, Texas, as is described in Vol. 73, page 104, of the deed records of Rusk County, Texas, but is only 60 acres as is shown by an agreement in writing between W. L. Laird and Celia and Joe Ladd." This judgment was dated January 5, 1927. On January 21, 1927, Laird executed a release of said vendor's lien notes. This release merely referred to the record where the deed was recorded for a description of the notes and land in question, acknowledged payment of the notes, and declared the lien released. Said release did not quitclaim unto those who had paid the notes the title to the land covered by the lien as is sometimes done. It is not contended that said release was sufficient to constitute a conveyance of the land from Laird to Ladd's heirs. We do not think that either of these instruments contains any language evidencing a recognition by Laird that Ladd's heirs owned the land here in dispute. But, even if such instruments did contain evidence of such a recognition, it would be immaterial, for, under the findings of the trial court, Laird had perfected title to said land by limitation long prior to the taking of said judgment and the execution of such release, and his title so perfected could not be thus divested out of him by any such gratuitous acknowledgment. 2 Tex. Jur. 139; Bruce v. Washington, 80 Tex. 368, 15 S. W. 1104; Franklin v. Smith (Tex. Civ. App.) 265 S. W. 715, par. 2 and cases there cited.

We are of the opinion that the trial court's conclusion that the defendants had title to the land by limitation was correct. The judgment of the trial court is therefore affirmed.