JOHN ILLG v. MARIA DE LA LUZ GARCIA ET AL.

No. 702. Decided November 14, 1898.

**1. Title—Common Source—Question of Fact.**

When there was evidence that the possession of those through whom defendant claimed may have antedated the conveyance to a common ancestor of themselves and plaintiff (which was relied on to establish common source), and have been derived through a claimant unconnected with such conveyance, the question of plaintiff's right to recover on proof of title under such common source was for the jury. (P. 257.)

**2. Same—Limitation—Repudiating Tenancy in Common.**

See evidence held to require the submission of the issue of title in defendant by limitation on the theory that, if acquiring a title under a source common with plaintiff as a cotenant, defendant's remote grantor had repudiated such cotenancy and held adversely. (P. 257.)

**3. Same—Outstanding Title.**

If, having so acquired title by limitation, the holder made an attempted partition,

with one claiming under plaintiffs by a void deed, and the partition was ineffective by reason of want of title in one of the parties, the title by limitation outstanding in the other remained unaffected. (Pp. 257, 258.)

**4. Estoppel—Declaration—Partition Deed.**

G., who had united in a deed of partition with L. as assignee of plaintiffs, reciting their joint ownership, was not estopped thereby as against plaintiffs (whose conveyance to L. was void and who were not parties to the deed) from claiming that his possession was adverse and not as their tenant in common. The recital was like any other declaration by G. affecting his possession, and was only evidence to go to the jury on the question of fact. (P. 258.)

**5. Evidence—Source of Possession—Will.**

A will, produced under circumstances which would admit a deed as an ancient instrument, may, though never probated, be received in evidence as tending to explain the origin of the possession of one claiming under it, and to disprove holding under another source of title common with that of plaintiffs. (P. 258.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

Illg, defendant in the trial court, appealed from a judgment against him for the recovery of real property, and on the affirmance of the judgment obtained a writ of error.

*Franklin & Cobbs*, for plaintiff in error.—The court erred in peremptorily instructing the jury to render a verdict in behalf of plaintiff for one-fourth of the land in controversy, for this: 1. The evidence clearly raised the issue of estoppel against the title claimed by plaintiff, and this issue should have been submitted to the jury under proper charges by the court. 2. The evidence clearly raised the issue of title by limitation by the defendant, and this issue should have been submitted to the jury under proper charges by the court. 3. The evidence clearly raised the issue of disaffirmance by the defendant of the holding as tenants in common with the plaintiff and those persons from whom she acquired title, and this issue should have been submitted to the jury by the court under proper instructions. Montgomery v. Noyes, 73 Texas, 209; Abernathy v. Stone, 81 Texas, 435; Aycock v. Kimbrough, 71 Texas, 333; Wardlow v. Miller, 69 Texas, 395; Stewart v. Baker, 17 Texas, 420; Gibbons v. Bell, 45 Texas, 423; Shannon v. Taylor, 16 Texas, 413; Johnson v. Johnson, 65 Texas, 87; George v. Thomas, 16 Texas, 74; Mitchell v. Allen, 69 Texas, 73; Glasscock v. Hughes, 55 Texas, 473; Ikard v. Thompson, 81 Texas, 291; Lecompte v. Toudouze, 82 Texas, 208; Cravens v. White, 73 Texas, 580; Morris v. Turner, 5 Texas Civ. App., 713; Hartwell v. Jackson, 7 Texas, 581; Womack v. Womack, 8 Texas, 397; Stephens v. Shaw, 68 Texas, 261; Bull v. Sevier, 11 S. W. Rep., 508; Woodward v. McNeill, 75 Texas, 146.

The witness Jose Antonio Gutierrez testified, as heretofore shown, that the larger tract of land of which the land in controversy formed a part was acquired by his father from one Jose Antonio de la Garza. If this be true, it shows, (1) that Jose Antonio Gutierrez and plaintiff were not tenants in common of the land in controversy; (2) if tenants in com-

mon, this tenancy was disaffirmed by the acquiring of the title to the whole property from another source; (3) an outstanding title in Jose Antonio de la Garza, which title had been acquired by limitations by defendant; (4) that though said instrument had never been probated as a will, it was nevertheless admissible as an ancient instrument for the purpose of disproving tenancy in common, outstanding title, and such title by limitation in the defendant. Same authorities.

*T. M. Paschal, Henry E. Vernor,* and *Joseph Ryan,* for defendants in error.—The trial court did not err in instructing the jury to find for appellee Maria de la Luz Garcia, because the uncontradicted evidence showed that she acquired title by inheritance to an undivided one-fourth of the property in controversy; that she became a feme covert on November 9, 1862, and has been such ever since; that she has never legally conveyed the same, and that no possession adverse to her was ever had by any one until by appellant Illg about one year after January 18, 1876, the date of his deed, when appellee was under the disability of coverture, and limitations did not and could not then begin to run against her. On character of possession necessary to support limitations: Rev. Stats. 1895, arts 3343, 3348, 3349; Fuentes v. McDonald, 85 Texas, 136; Satterwhite v. Rosser, 61 Texas, 171; Sellman v. Hardin, 58 Texas, 86; Murphy v. Welder, 58 Texas, 241; Wheeler v. Moody, 9 Texas, 377.

To ripen possession into title by limitations these conditions must exist, viz: 1.   The original entry must be made under a specific claim of title inconsistent with and hostile to the claims of all others.   2.   Such entry must be followed by an uninterrupted and continuous possession coupled with actual cultivation, use, and enjoyment of the land entered upon, for the full length of time prescribed by statute.   3.   The possession must be such as will operate a disseizin or dispossession of all others, and must be accompanied with the exercise of such rights as pertain to an owner alone.   Craig v. Cartwright, 65 Texas, 413.

The trial court did not err in refusing to submit the issue of limitations to the jury, because, even if an adverse possession by Jose Antonio (the third) began prior to appellee's marriage on November 9, 1862, appellant Illg did not connect himself therewith and did not show privity of title between himself and said Jose Antonio, the proof further showing that such adverse possession, if any, had been abandoned by said Jose Antonio, prior to the date of Illg's entry. Rev. Stats. 1895, art. 3350; Wheeler v. Moody, 9 Texas, 377; Trueheart v. McMichael, 46 Texas, 222; Dotson v. Moss, 58 Texas, 155; Angell on Lim. secs. 413, et seq.

The very basis for partition is co-ownership, and when this does not exist the instrument which attempts to partition neither confers on the one nor takes away from the other party to such instrument any right or title to the property sought to be partitioned.   Therefore said partition deed between Lehmann (appellant's vendor) and Jose Antonio Gutierrez conferred no rights on or title in Lehmann.   Davis v. Agnew,

67 Texas, 213; Dawson v. Lawrence, 13 Ohio, 546, 42 Am. Dec., 210; Freem. on Coten. and Part., sec. 409.

The court did not err in refusing to submit the issue of limitations to the jury, because the recitals in the very title papers under which appellant Illg claims show that the possession of Gutierrez, if any he had, was not adverse to appellee, and that said Gutierrez as well as Lehmann, Illg's immediate vendor, recognized appellee's title as late as 1876, fourteen years after appellee's marriage in 1862. And because appellant Illg is bound by such recitals recognizing and admitting appellee's title. Box v. Lawrence, 14 Texas, 556; Willis v. Gay, 48 Texas, 469; Renick v. Dawson, 55 Texas, 109; Gaston v. Dashiell, 55 Texas, 516; Greenl. on Ev., sec. 23.

To establish possession on the part of a tenant in common adverse to that of his cotenant, there must have been a repudiation of the rights of the cotenant, of which the latter had notice, or of such a notorious character that notice will be presumed. Phillipson v. Flynn, 83 Texas, 580; Alexander v. Kennedy, 19 Texas, 492; Teal v. Terrell, 58 Texas, 262; Moody v. Butler, 63 Texas, 210; Gilkey v. Peeler, 22 Texas, 663; Flanagan v. Boggess, 46 Texas, 330; Freem. on Coten. and Part., sec. 166.

A married woman is not estopped from recovering real property so attempted to be conveyed by a void instrument, she not being guilty of some positive fraud or suppression, or concealment equivalent thereto. Cross v. Everts, 28 Texas, 524; Berry v. Donley, 26 Texas, 737; Whetstone v. Coffey, 48 Texas, 378; Looney v. Adamson, 48 Texas, 619; Blagge v. Moore, 23 S. W. Rep., 472; Johnson v. Bryan, 62 Texas, 626; Williams v. Ellingsworth, 75 Texas, 480; Hayden v. Moffatt, 74 Texas, 647; McLaren v. Jones, 89 Texas, 135; Breitling v. Chester, 88 Texas, 587; Dev. on Deeds, sec. 548.

The trial court did not err in refusing to admit in evidence the alleged will or deed of Jose Antonio de la Garza, offered by defendant, because (1) the same was not produced from or had remained in the proper custody; (2) it purports to be a will, but has never been probated or proven as such; (3) it is not the act of any person connected with the title to the property in controversy; (4) it does not purport to be the will of a party connected with this suit or with the title to said property either from the common source or from the sovereignty of the soil; (5) it does not describe the property in controversy, or in any way refer thereto; (6) there was no proof that Jose Antonio Butierrez, the beneficiary named in said instrument, is the same as Jose Antonio Gutierrez, father of the witness Santiago Gutierrez; (7) because the defendant Illg admitted in his testimony that he claimed only through Conrad Lehmann, and it was shown that said Lehmann claimed only through said void deed from plaintiffs, and not through either Jose Antonio de la Garza or Jose Antonio Gutierrez. Moursund v. Priess, 84 Texas, 554; Lagow v. Glover, 77 Texas, 450; Ochoa v. Miller, 59 Texas, 461.

DENMAN, ASSOCIATE JUSTICE.—This suit was brought November 20, 1894, by Maria de la Luz Garcia, joined by her husband and her sister, Josephina Jewett, against John Illg, to recover the title and possession of a lot in San Antonio, Texas, and in case they should recover less than the entire lot, for partition. By amended petition filed December 17, 1896, plaintiff, Josephina Jewett, declined further to prosecute the suit, and the same proceeded with said Maria de la Luz Garcia and her husband as sole plaintiffs.

Defendant Illg pleaded not guilty; also, "that defendant and those whose title he holds have had peaceable and adverse possession of the property in controversy, cultivating, using, and enjoying the same for more than ten years next after plaintiffs' cause of action accrued and prior to the filing of this suit. Wherefore, he says that plaintiffs' right of recovery herein is barred by the statutes of limitation of ten years." Also, in substance, that if plaintiffs ever owned any interest in the land in controversy, that same was a part of a larger lot; that they claimed the same by inheritance from their mother, and now assert that she was a tenant in common with one Jose Gutierrez; that if said tenancy ever existed, that more than sixty years ago Gutierrez disaffirmed same by asserting title to the whole of the lot exclusively in himself and occupying the same continuously down to 1874, when he conveyed to Conrad Lehman adversely to plaintiffs and their said mother, claiming title to the same exclusively in himself, openly and notoriously, paying taxes, and erecting improvements thereon, and that, as heretofore averred, his title to the whole of said property was complete under the statutes of limitation at the time of the execution of said deed to Lehman. By supplemental petition plaintiffs replied to defendant's pleas of limitation, that Maria de la Luz Garcia and her husband, who joined her in said petitions, were lawfully married in November, 1862.

There were other issues presented by the pleadings of the parties which we deem it unnecessary to notice.

On the trial, the court instructed the jury to find for plaintiffs an undivided one-fourth of the land in controversy. From a judgment rendered upon the verdict responding to said charge, Illg appealed to the Court of Civil Appeals, assigning said charge as error, and said court having affirmed the judgment, he has brought the case to this court upon writ of error complaining of the charge.

In order to determine the propriety of the charge, it will be necessary to make a general statement of the evidence.

Plaintiff introduced a deed from Domingo Perez to Clara Ximenes, dated February 14, 1839, conveying a lot eleven varas wide in San Antonio, .Texas, bounded west by Laredo Street, south by the street that leaves the city by the lower end of Military Plaza, and east by the San Pedro Creek. Plaintiff testified that Clara Ximenes and her husband, Jose Antonio Gutierrez (the first), left only one child, Jose Antonio Gutierrez (the second), who married Josefa Silva, and left at his death, in 1816, as his only children, Jose Antonio Gutierrez (the third) and

Conception Gutierrez, wife of Diego Jewett; that said Conception died in Mexico in 1855, leaving as her only children plaintiffs Josefina and Maria de la Luz, who married her present husband, Garcia, in Mexico, in 1862; that said Josefa Silva about 1818, soon after the death of her said husband, Jose Antonio Gutierrez (the second), moved to Monterey, Mexico, leaving her son, said Jose Antonio Gutierrez (the third) with his grandmother, said Clara Ximenes, in San Antonio, Texas, and died in Monterey in 1870, at the age of eighty-two years; that when said Josefa Silva left San Antonio she left no power of attorney with her said son, as he was but a child and was left in charge of his grandmother, Clara Ximenes. Plaintiffs next introduced in evidence, for the purpose of proving common source of title only, a deed from themselves to Conrad Lehman, dated October 20, 1875, which instrument, it is admitted, did not convey plaintiff's title because her husband did not join therein. Plaintiffs next introduced in evidence a partition deed between said Jose Antonio Gutierrez (the third) and Conrad Lehman, dated January 18, 1876, which instrument set apart to Lehman the eastern portion and to Jose Antonio Gutierrez the western portion of the lot conveyed by Perez to Clara Ximenes, as aforesaid, but no reference is made to said first deed in the latter. Plaintiffs next introduced a deed from Conrad Lehman to John Illg, dated January 18, 1876, conveying to Illg the lot set apart to Lehman in said partition deed. One of the sons of said Jose Antonio Gutierrez (the third), for defendants, at the age of 70 years, testified that his father was 84 years old when he died, sixteen or seventeen years ago; that his said father got the property (referring to the entire lot partitioned between his father, Jose Antonio Gutierrez, and Lehman, as aforesaid) from Jose Antonio de la Garza, who died about 1835, and who was the husband of Clara Ximenes, but could not say whether Clara Ximenes had been previously married to Jose Antonio Gutierrez (the first); that Jose Antonio de la Garza left the property to his father, who claimed it all as his; that in 1836 there was a jacal in the corner, and after that his father built a house there about fifty years ago; that his father lived there and fenced the property, the fence being there from 1836 up to lately; that his father paid the taxes; that no claim was ever made against his father for the property until about the time the said deed between his father and Lehman was executed; that witness was born on the property and lived there after he was married, and that his father kept horses and cattle on the lot all the time; that Conception Gutierrez was his father's sister, but he never knew her children, plaintiffs in this case, nor did he know his grandmother, Josefa Silva; that his father was not the agent or attorney for his aunt, but Lehman was; that he does not know whether his father acted as such for his grandmother, Josefa Silva. His father never told him about it. Witness did not know the husband of Josefina Jewett— never heard his name; that his father claimed that his grandfather, Jose Antonio de la Garza, left the property to him. He had no difficulty with it at all. His father gave Lehman property in the partition

deed because he willed to do it. He wanted to give it to him for Maria de la Luz Garcia and Josefina Jewett.

From the testimony of this witness for defendant, the jury might have concluded that his father, Jose Antonio Gutierrez, claiming under Garza, had peaceable and adverse possession of the entire lot, using and enjoying the same from 1836 to the date of the deed to Lehman in 1875, and that in fact there was never any common source of cotenancy between him and anyone claiming under Clara Ximenes, who does not appear to have had any claim to the land until the deed from Perez to her in 1839, in which event plaintiff could not have recovered upon her alleged common source.

Again, if the jury had not so found, but had concluded that he was mistaken as to the source of his father's claim and the time he took possession, and had further concluded that his father originally acquired the property from Clara Ximenes after she received the deed from Perez in 1839, we are of opinion that they might have found that he, in the beginning of his possession, repudiated any claim of his mother or sister, and that they had notice thereof. Upon the death of his father, in 1816, his mother and sister, leaving him with his grandmother, Clara Ximenes, abandoned the old home and took up their permanent abode in Monterey, where his sister married and raised a family consisting of these plaintiffs. There seems to have been little communication between the two branches of the family. No claim by his mother or sister during their lives was made upon him for any portion of the property, which he was openly claiming, using, and paying taxes upon as his own, and upon which he had raised his family. Certainly repudiation of the claim of a cotenant and notice thereof may be shown by circumstances, and in cases like this, after all the parties are dead, the jury may infer such facts from long continued possession under claim of exclusive ownership and nonassertion of claim by the other tenant.

If the jury had found that Gutierrez had acquired the entire title by limitation at the time the deed between him and Lehman was executed, plaintiff could not have recovered; for if such deed, as she contends, was void under the doctrine of Davis v. Agnew, 67 Texas, 211, for the reason that Lehman had no title upon which to have based a partition, then the legal title remained outstanding in Gutierrez, and if, on the other hand, it passed Gutierrez's title thus perfected by limitation to Lehman, Illg has a perfect title. The coverture of plaintiff, beginning in 1862, would not affect these questions, nor would it prevent Illg, under his evidence of limitation in the record, which we have not deemed it necessary to quote, from having acquired from Gutierrez whatever title he owned at the date of the deed to Lehman and did not pass thereby.

It is contended, however, that the recital in said partition deed, to the effect that Gutierrez and Lehman, as assignees of plaintiffs, were joint owners of the lot and had agreed upon a partition, shows that the

prior possession of Gutierrez was not adverse to the interest of plaintiffs. Plaintiffs, not being parties or privies to this deed and therefore not bound thereby, clearly could not urge such recital as an estoppel, but could only use it as evidence, just as they could any other declaration made by Gutierrez while in possession explanatory of the nature of his holding. In view of another trial we do not deem it proper to comment upon the comparative probative force of this recital and the other testimony bearing upon the nature of Gutierrez's possession. Having reached the conclusion that the one does not control the other as a matter of law, it follows that we are of the opinion that the question of limitation should have been submitted to the jury. For error in giving said charge the judgments will be reversed and the cause remanded.

If on another trial it should be shown that the paper purporting to be the will of Garza came from such custody and was surrounded by such circumstances as would make it admissible as an ancient instrument if it had been a deed, and if it be shown that it relates to the land in controversy or was claimed by Jose Antonio Gutierrez to have been the source of his title thereto, we think it should be admitted as tending to show that Gutierrez never in fact took possession of or held the lot as tenant in common with plaintiff's mother, but all the time held it adversely to her. It would be evidence on such issue though it be conceded that under the law then in force a will must have been probated to make it effective as a muniment of title.

*Reversed and remanded.*